**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

FATIMA S.,

                   Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.

Civil Action No. 20-07094 (SDW)

**OPINION**

March 29, 2022

**WIGENTON**, District Judge.

Before this Court is Plaintiff Fatima S.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Peter Lee's ("ALJ") denial of Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act").  This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Venue is proper pursuant to 28 U.S.C § 1391(b).  This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, this Court finds that the ALJ's factual findings are supported by substantial evidence and that his legal determinations are correct.  Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by her first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

## I.   PROCEDURAL AND FACTUAL HISTORY

### A.  Procedural History

On January 13, 2017, Plaintiff filed concurrent applications for DIB and SSI alleging disability beginning January 12, 2015, due to head trauma with concussion, headaches, nausea, blurred vision, memory loss, confusion, and anxiety.  (D.E. 8-2 (Administrative Record ("R.")) at 10, 242–48, 249–56, 273.)   Both claims were denied initially on June 13, 2017, and upon reconsideration on August 1, 2017.  (R. 10, 158–64, 171–76.)  At Plaintiff's request, Plaintiff received a hearing before the ALJ on January 3, 2019  (R. 53–93), and the ALJ issued his opinion on February 19, 2019.  (R. 7–31.)  The Appeals Council denied the request for review on April 14, 2020, making the ALJ's decision the final decision of the Commissioner of Social Security.  (R. 1–3.)  Plaintiff subsequently filed the instant appeal in this Court.  (D.E. 1).  The parties completed timely briefing and Plaintiff did not file a reply.  (D.E. 17, 20.)

### B.  Factual History[2]

Plaintiff was born on May 17, 1960.  (R. 96.)  Plaintiff has a bachelor's degree and previously worked as a pharmacy technician and customer service manager.  (R. 58–61, *see generally* 274, 295.)  Plaintiff stopped working on or about March 15, 2016, due to head trauma with concussion, headaches, nausea, blurred vision, memory loss, confusion, and anxiety.  (R. 273.)

#### i.  Plaintiff's Slip and Fall Accident

On January 12, 2015, Plaintiff slipped and fell on ice, sustaining injuries from landing on her head and lower back.  (R. 119, 343, 361.)  Plaintiff sought examination at St. Joseph's Regional Medical Center reporting loss of consciousness, nausea, and pain in her lower back, and head.  (R.

---

[2] Plaintiff's omission of the "statement of facts with references to the administrative record" in its moving brief is a blatant disregard of Local Rule 9.1(e)(5)(c).  Future non-compliant filings may result in sanctions, including dismissal.

12, 343–346.)  On examination, Plaintiff was fully oriented and able to follow all commands.  (R. 343, 345.)  Plaintiff had full 5/5 strength in the upper and lower extremities and had normal range of motion in the cervical spine.  (R. 343, 361.)  A Computed Tomography ("CT") scan of the cervical spine revealed degenerative changes and diffuse disc disease.  (R. 358.)  A CT scan of the lumbar and thoracic spine revealed no evidence of acute fracture.  (R. 360.)  A CT scan of the head was "questionable for a subarachnoid hemorrhage in the right temporal gyri and bilateral frontal gyri."  (R. 13, 343.)  A repeat CT scan of Plaintiff's head on January 13, 2015, showed no bleed. (R. 343.)  Plaintiff refused narcotics for pain and was suggested to take Extra Strength Tylenol and Percocet.  (R. 345.)  Plaintiff was discharged on January 13, 2015.  (R. 345–46.)

A few days later, on January 15, 2015, Plaintiff was admitted to Valley Hospital Emergency Room.  (R. 369.)  Plaintiff reported spasmatic right flank pain, tenderness, headaches, and nausea.  (R. 369, 370, 376.)  On examination, Plaintiff had normal alertness, orientation, and speech with no neurological deficits.  (R. 369–401.)  CT scans of Plaintiff's brain, abdomen, and pelvis showed no significant or acute abnormalities.  (R. 373–74.)  Plaintiff was discharged on January 17, 2015.  (R. 376.)  The following is a summary of the relevant medical evidence.

**ii.   Relevant Medical History**

On February 4, 2015, Plaintiff sought examination with treating chiropractor Dr. Adam Awari, D.C.  (R. 404–06.)[3]  Plaintiff reported severe lower back and neck pain, which was aggravated by, *inter alia*, bending, standing, sitting, and coughing/sneezing.  (R. 404.)  Plaintiff reported consistent knee pain and headaches.  (R. 404.)  Upon examination, Plaintiff had a limited range of motion of the cervical and lumbar spines; 4/5 muscle strength; cervical and lumbar spasm; and some hypoesthesia on the right.  (R. 405.)  Plaintiff was diagnosed with cervical, thoracic, and

---

[3] The ALJ gave limited weight to Dr. Awari's opinion because he did not provide a function-by-function assessment of the claimant's limitations.  (R. 28.)

lumbar sprain/strain; cervical, thoracic, and lumbar subluxation at multiple segments; and sprain/strain of the knee and leg.  (R. 405.)

On February 12, 2015, Plaintiff sought examination from neurologist Dr. Nabil Yazgi, M.D., P.A.  (R. 397–403.)  Plaintiff reported headaches, neck and lower back pain, dizziness, and poor balance.  (R. 397.)  Examination demonstrated that Plaintiff had full orientation; normal concentration; generally intact sensation; strength of 4+/5 to 5/5 in her legs; no evidence of atrophy; and no cognitive deficits.  (R. 399–400, 405.)  While examination notes demonstrated that Plaintiff's tandem and antalgic gaits were unsteady, the remainder of Plaintiff's coordination and movement examinations were "normal."  (R. 401–402.)  Plaintiff had limited motion in the cervical and lumbar spines and a positive straight leg raising at forty-five degrees.  (R. 402.)  When Plaintiff returned to Dr. Yazgi on May 18, 2015, Dr. Yazgi's medical findings remained mostly unchanged from the previous examination.  (R. 485–90.)

On April 22, 2015, Plaintiff underwent a cervical spine MRI, which depicted broad-based disc herniations at C4-5 and C5-6 impressing on the anterior thecal, with moderate narrowing of the neural foramina at C5-6.  (R. 387.)  At C3-4 and C6-7, disc bulging was present but with moderate impression on the anterior thecal sac.  (*Id.*)  Plaintiff also underwent a lumbar spine MRI on the same day, which revealed a central subligamentous disc herniation at L1-2 moderately impressing on the anterior thecal sac.  (R. 386.)  There was a moderate disc bulging at L4-5 moderately impressing on the anterior thecal sac and narrowing the lateral recesses.  (*Id.*)  A subsequent MRI of the brain in June 2015 showed no acute intracranial abnormalities.  (R. 388.)

On June 9, 2016, Plaintiff visited Dr. Rosenbaum, M.D. for an initial neurological evaluation.  (R. 434.)  Plaintiff reported nausea, inability to sleep due to panic attacks, anxiety, and issues with balance and coordination.  (*Id.*)  An evaluation revealed only mild to moderate severe

tenderness and spasm in the paraspinal and posterior shoulder muscles.  (R. 435.)  Plaintiff had

normal tone, strength, and rapid movements without drift or atrophy.  (R. 435.)  A June 17, 2016

EMG/NCV established that Plaintiff had chronic right C5-6 radiculopathy with moderate to severe

carpal tunnel syndrome.  (R. 446, 449.)[4]  Thereafter, on August 10, 2016, Dr. Awari opined that

Plaintiff's injuries were permanent within a reasonable degree of medical certainty.  (R. 392.)  Dr.

Awari indicated that there was potential for additional neurological and/or motor sequelae and

post-traumatic degenerative arthritic changes in the affected areas.  (*Id.*)

On November 14, 2016, Plaintiff was hospitalized at the Valley Hospital Emergency Room

for dizziness.  (R. 407–08.)  On examination, Plaintiff was in no acute stress; was able to follow

simple commands; and had a normal affect. (R. 411, 415.)  A CT angiogram of Plaintiff's brain

returned unremarkable results and a CT scan of Plaintiff's head was normal with no changes when

compared with Plaintiff's January 15, 2015 CT scan.  (R. 422–43.)  Plaintiff was diagnosed with

dizziness due to post-concussion syndrome and discharged on November 17, 2016.  (R. 407–08.)

On January 13, 2017, Plaintiff saw Dr. Amit Agarawl, M.D., for a single short appointment, at

which time she was 63 inches tall, weighed 245 pounds, and her blood pressure was 124/73.  (R.

427.)  Two weeks later, Plaintiff saw Dr. Rosenbaum and reported extreme headaches, difficulty

sleeping, and pain.  (R. 437–38.)  Plaintiff was prescribed Zofran.  (R. 438.)

On March 29, 2017, Plaintiff was seen for a psychological consultative examination with

Dr. Dalia Sherman, Psy.D.  (R. 469.)  Plaintiff reported spending her days doing "nothing" and

feeling depressed "from not being able to do anything."  (R. 470.)  On examination, Plaintiff's gait

and posture was swaying, but motor behavior was normal.  (*Id.*)  While Plaintiff had full orientation

---

[4] In September 2016, Dr. Rosenbaum issued a final report opining that the persistence of the symptoms and signs of Plaintiff's injuries indicated that her injuries were permanent and would continue to hamper her functioning daily for the foreseeable future.  (R. 492–96.)

and adequate social skills, Plaintiff was unable to perform serial 7's or copy a complex diagram. (*Id.*)  Dr. Sherman opined that Plaintiff's results were "possibly" indicative of cognitive impairments.  (*Id.*)  Dr. Sherman's impression was "depressive disorder due to medical condition and neurocognitive disorder due to traumatic brain injury".  (R. 471.)  Plaintiff was recommended to seek psychological counseling and cognitive rehabilitation.[5]  (*Id.*)

### iii.   State Agency Physicians' Findings

On April 27, 2017, state agency psychologist Darrell Snyder, M.D., reviewed the record and found, *inter alia*, that Plaintiff was not significantly limited in her ability to remember locations and work-like procedures; not significantly limited in her ability to understand, remember, and complete short and simple instructions; and not significantly limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (R. 107–108.)[6]

On May 23, 2017, Plaintiff underwent an orthopedic consultative examination with Dr. Rashel Potashnik, M.D.  (R. 479.)  Examination notes showed that Plaintiff walked at a reasonable pace with normal gait and no assistive device being used.  (R. 479–482.)  Plaintiff displayed no signs of ataxia or dysmetria.  (R. 480.)  Plaintiff's mental status, cranial nerves, and sensory examinations were normal.  (R. 479–480.)  Plaintiff's range of motion was functional and straight leg testing was negative.  (R. 480–482.)

---

[5] The ALJ gave little weight to Dr. Sherman's opinion because it was based only on a single observation of the Plaintiff and some of the limiting factors mentioned were not well documented.  (R. 28.)

[6] In July 2017, state agency consultant Amy Brams, Ph.D., affirmed Dr. Snyder's assessment.  (R. 137–139, 151–153.)

On June 12, 2017, state agency physician Joseph Sobelman, M.D., reviewed the record and found that Plaintiff's neurological exam, range of motion, and gait were normal.  (R. 103–104, 119.)  Dr. Sobelman determined that Plaintiff's physical impairments were non-severe and that Plaintiff's medically determinable impairments did not have more than a minimal impact on her ability to perform basic work activities. (R. 103-104, 118–119.)[7]

### C.      Hearing Testimony

 At the administrative hearing on January 3, 2019, Plaintiff was represented by counsel. (R. 53.)  ALJ Lee heard testimony from Plaintiff, her daughter, and an impartial vocational expert, Robin Cook ("VE Cook").  (*See generally* R. 53–95.)

Plaintiff testified that following her accident she could not do housework because she gets winded and easily disoriented.  (R. 64–65.)  Plaintiff reported, among other things, memory loss; heaviness in her head, shoulders, lower back, and arms; difficulty balancing; lack of arm mobility; and difficulty sleeping.  (R. 64–67, 71.)  Plaintiff further stated that she could not grip stair handles and must hold onto walls and furniture when walking.  (R. 71.)  Plaintiff stated that she recently moved in with her son because she is unable to do anything for herself.  (R. 67.)  Prior to the accident, Plaintiff testified that she managed her husband's medical clinic but could no longer do so due to memory loss.  (R. 71.)  Plaintiff's daughter testified that her and her brother handle Plaintiff's daily tasks such as cooking, cleaning, and bill paying.  (R. 76–77.)

VE Cook testified that there were unskilled jobs at the medium exertional level in the national economy that a person with Plaintiff's age, education, work experience, and residual functional capacity, as found by ALJ Lee, could perform such as a linen room attendant, an industrial cleaner, or a cook.  (R. 87–88.)

---

[7] In July 2017, state agency physician Howard Goldbas, M.D., affirmed Dr. Sobelman's assessment.  (R. 134–35, 148–49.)

## II.   **LEGAL STANDARD**

### A.    **Standard of Review**

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which

evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480.  If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910.  If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p.  An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If a severe impairment or combination of impairments is not found, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e).  An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.  20 C.F.R. §§ 404.1545, 416.945.  The ALJ considers all impairments in this analysis, not just those deemed to be severe.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p.  After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work.  20 C.F.R. §§ 404.1520(e) – (f), 416.920(e) – (f).  If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).  If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing

evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).  If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.    <u>DISCUSSION</u>

### A.  The ALJ's Decision

On February 19, 2019, ALJ Lee issued a decision concluding that Plaintiff was not disabled from March 15, 2016, through December 31, 2018, when Plaintiff's insured status expired.  (R. 18–31.)  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 15, 2016, Plaintiff's alleged onset date.  (R. 18.)  At step two, the ALJ found that Plaintiff had the following severe impairments: diplopia, carpal tunnel syndrome, and depressive disorder.  (R. 18.)  The ALJ determined that Plaintiff's degenerative disc disease, obesity, neurocognitive disorder, hypertension, and hypothyroidism were "non-severe" impairments because they had "no more than a minimal effect on her ability to perform basic work activities[.]" (R. 18–19.)

At step three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the severity of any listing.  (R. 21–24.)  In particular, Plaintiff's severe impairments did not meet the requirements of Listings 2.02, 2.03, 2.04, 11.14, or 12.04 for the reasons set forth below.  (R. 21–24.)  The ALJ found that Plaintiff's diplopia did not meet the requirements of Listings 2.02, 2.03, and 2.04 because the medical evidence showed, *inter alia*, that Plaintiff had a normal eye exam with corrected vision of 20/30 on the right and 20/25 on the left; full modality of both eyes; normal optic nerve; no evidence of significant contraction; and no evidence of loss of visual efficiency or impairment in the better eye.  (R. 21.)

Next, Plaintiff's carpal tunnel syndrome did not meet the requirements of Listing 11.14 because treatment notes demonstrated, *inter alia*, that Plaintiff had 5/5 grip and pinch strength in both hands; no evidence of disorganization of motor function in two extremities; and no evidence of a marked limitation in understanding, interacting with others, concentrating, or adapting. (*Id.*) Finally, the severity of Plaintiff's mental impairment did not meet or medically equal the criteria of Listing 12.04, which required that Plaintiff meet paragraphs "A and B, or A and C" of the Listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. ALJ Lee found that Plaintiff's impairment did not meet the "paragraph B" criteria because medical records evidenced that Plaintiff had full orientation; adequate social skills; and the ability to drive herself to the examination with Dr. Sherman and the administrative hearing. (R. 22, 470.) Further, ALJ Lee found that "paragraph C" was not met because the record did not show that Plaintiff received ongoing medical treatment, therapy, or psychological support; had minimal capacity to adapt to changes in the environment; and had deteriorated functioning due to simple changes or increased demands. (R. 23.)

Although the state agency physicians found that Plaintiff had no exertional limitations and could perform heavy work, in assessing Plaintiff's RFC the ALJ found that Plaintiff could perform medium work with the following limitations:

> [Plaintiff] can occasionally climb ropes, ladders, or scaffolds, but can never be exposed to unprotected heights or hazardous machinery[,] . . . frequently climb stairs and ramps; occasionally crawl; and frequently stoop and crouch. [Plaintiff] can perform frequent fingering and handling; and frequently balance. She can do jobs that require occasional depth perception. She can have occasional contact with supervisors, co-workers and the public; and is able to do only simple routine tasks.

> (R. 24–29.)

At step four, the ALJ determined that Plaintiff did not have the residual function capacity to do her past relevant work.  (R. 24–26.)  At step five, considering Plaintiff's age, education, work experience, RFC, and the vocational expert's testimony, the ALJ found that there was a significant number of jobs in the national economy that Plaintiff could perform, such as an industrial cleaner, linen room attendant, and cook.  (R. 30.)  Based on the foregoing, the ALJ found Plaintiff was not disabled.  (R. 31.)

### B. Analysis

On appeal, Plaintiff seeks reversal or remand of the Commissioner's decision.  (*See* D.E. 17.)  Plaintiff asserts that the ALJ's decision to find Plaintiff's degenerative disc disease, obesity, neurocognitive disorder, hypothyroidism, and hypertension as not severe impairments was not based on substantial evidence.  (D.E. 17 at 11–25.)  Plaintiff further asserts that the ALJ's evaluation of Plaintiff's obesity was not based on substantial evidence.  (D.E. 17 at 25–38.)  This Court considers the arguments in turn and finds each unpersuasive.

### A.

Plaintiff asserts that the ALJ erred in finding "five" of her impairments (degenerative disc disease, obesity, neurocognitive disorder, hypothyroidism and hypertension) to be non-severe but fails to address these impairments; identify which disabilities suffered by the Plaintiff have been overlooked or misinterpreted by the ALJ; or discuss how the ALJ erred in finding these impairments to be non-severe.  (*See generally* D.E. 17 at 11–25.)  In cases where a party is attacking a government agency's ruling, the party bears "the burden of showing that an error was harmful."  *Davis–Harris v. Comm'r of Soc. Sec.*, Civ. No. 20–1215, 2021 WL 689130, at *1 (D.N.J. Feb. 23, 2021) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).  Plaintiff's brief only focuses on her degenerative disc disease, arguing that the ALJ failed to find Plaintiff's

degenerative disc disease as a severe impairment or consider it in his analysis of the listings and Plaintiff's RFC.  (D.E. 17 at 11–25.)  While obesity is raised cursorily, Plaintiff fails to address the remaining alleged errors.

The ALJ fully articulated his reasoning in determining that "five" of Plaintiff's impairments were non-severe at step two of the sequential evaluation process.  (R. 18–20; D.E. 17 at 11.)  First, ALJ Lee found that Plaintiff's degenerative disc disease was non-severe because an MRI of the cervical spine noted no evidence of significant cord compression, and the MRI of the lumbar spine noted no evidence of significant central canal stenosis.  (R. 19–20.)  The ALJ weighed Plaintiff's subjective reports of lower back pain and inability to grip but found Plaintiff's reports inconsistent with the consultative findings of Dr. Potashnik, documenting that Plaintiff had full range of motion; normal gait; no difficulty using her hands; and 5/5 grip and pinch strength. (R. 19–20).  Second, Plaintiff's obesity was found non-severe because Plaintiff's obesity alone and in combination with her other impairments had no more than a minimal effect on her ability to perform basic work activities.  (R. 20.)  Third, Plaintiff's neurocognitive disorder was found non-severe because Plaintiff's mental alertness and overall cognitive functioning were within normal limits. (R. 19.)  Fourth, Plaintiff's hypertension did not result in any significant end organ damage such as heart disease or stroke residuals. (R. 19.)  Lastly, Plaintiff's hypothyroidism is being effectively controlled with Synthroid.  (R. 20.)  In sum, the ALJ's decision to find Plaintiff's degenerative disc disease, obesity, neurocognitive disorder, hypothyroidism, and hypertension as non-severe impairments was based on substantial evidence.  (R. 18–20.)

Moreover, Plaintiff's contention that the ALJ erred in finding "five" of Plaintiff impairments to be non-severe is not legally relevant because the ALJ proceeded beyond step two of the sequential evaluation process.  (*See generally* R. 18–31.)  An ALJ's decision should be "read

as a whole," *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004), and ALJs are not required to discuss or list every impairment or diagnosis in the record, *see Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (stating that the erroneous identification of certain severe impairments as non-severe is harmless where the ALJ otherwise finds in claimant's favor at step two).  The step two decision is a threshold analysis, and once the ALJ finds any one impairment severe, he may move on to consider all impairments, severe or not, at subsequent steps.  *See Desando v. Astrue,* Civ. No. 07-1823, 2009 WL 890940, at *5 (M.D. Pa. Mar. 31, 2009); *Bliss v. Astrue*, Civ. No. 08-980, 2009 WL 413757, at *1 n.1 (W.D. Pa. Feb.18, 2009).

Here, the ALJ found that Plaintiff had other severe impairments at step two and then proceeded through the sequential evaluation process.  (R. 18–31.)  At the later steps, the ALJ considered the entire record, including Plaintiff's subjective complaints of difficulty walking, balancing, sleeping, cooking, concentrating, and remembering things to determine Plaintiff's RFC. (R. 24–29.)  Reading the decision as a whole, it is evident that Plaintiff's severe and non-severe impairments were incorporated into the ALJ's evaluation of Plaintiff's RFC.  (R. 24–29.)  In assessing Plaintiff's RFC, the ALJ considered, *inter alia*, the examination of Dr. Potashnik showing that Plaintiff had full range of motion; MRI results of the cervical and lumbar spine indicating no significant cord compression or central canal stenosis; the report of Dr. Rosenbaum opining that Plaintiff's injuries will continue to hamper her daily functioning; and the state agency physician's findings that Plaintiff had no exertional limitations and could perform heavy work. (R. 24–29.)

To the extent Plaintiff argues that the medical records relied upon by the ALJ to support his findings were in error, Plaintiff's argument fails.  (D.E. 17 at 20–25.)  "[C]ourts are not permitted to re-weigh the evidence or impose their own factual determinations."  *Chandler v.*

*Comm'r. of Soc. Sec.*, 667 F.3d 356 (3d Cir. 2011).  Plaintiff may point to evidence that supports a different conclusion, but "[t]he ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz*, 244 F. App'x. at 479 (citation omitted).  In this matter, Plaintiff has pointed to no such evidence.

### B.

Second, Plaintiff argues that the ALJ did not properly consider Plaintiff's obesity in his evaluation, and therefore, it is not based on substantial evidence.  (D.E. 17 at 25–38.)  "[A]n ALJ must meaningfully consider the effect of a claimant's obesity individually and in combination with her impairments[.]"  *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).  To be meaningful, an ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d at 505; *see Diaz*, 577 F.3d at 504 (explaining that an ALJ is not required to "employ particular 'magic' words" in his decision); *see also Cooper v. Comm'r of Soc. Sec.*, 563 Fed. Appx. 904, 911 (3d Cir. 2014).  Social Security Ruling ("SSR") 02-1p provides that "we will find that obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."  SSR 02-1p, 2002 WL 34686281, at *4 (Sept. 12, 2002).  SSR 02-1p further states that "there is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment."  "Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is 'severe.'" *Id.* at *4.  "[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments." *Id.* at *6.

It is the plaintiff's burden to establish not just that "obesity *can* impair [her] ability to perform basic work activities," but to "specify[] *how* her obesity . . . affected her ability to perform basic work activities." *Carter v. Comm'r of Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020). Remand is not warranted where a Plaintiff does "not specify how [her] obesity further impaired [her] ability to work, but speculates merely that [her] weight makes it more difficult to stand and walk." *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (citation and quotation omitted); *see also Carter v. Comm'r of Soc. Sec.*, 805 F. App'x at 143 (finding remand is not required where claimant did not identify any evidence reflecting how her obesity limited her ability to perform work activities); *Santini v. Comm'r of Soc. Sec.*, No. 8-5348, 2009 WL 3380319, at *6 (D.N.J. Oct. 15, 2009) aff'd 413 F.App'x 517 (3d Cir. 2011) ("The problem for Plaintiff, however, is that she has pointed to no medical evidence of record that her obesity has caused a substantial or relevant work-related limitation of her functioning.").

Here, Plaintiff has pointed to no medical evidence of record that her obesity has limited her ability to perform work activities or caused any additional functional limitations beyond those contained in the RFC.  (D.E. at 24–38.)  While Plaintiff argues that her BMI of 43.4 combined with her other impairments must have more than a minimal effect on her ability to stand, walk, lift, and carry, Plaintiff has not furnished any evidence—not one medical opinion—that her obesity caused any such limitations.  (D.E. 17 at 30–31.)  Importantly, Plaintiff did not allege obesity as an impairment in her DIB application or before the ALJ.  (R. 96–97, 111–112, 128–129, 142–143, 273, 286.)   Plaintiff has not pointed to any other limitations or evidence that the ALJ failed to consider in evaluating her obesity.  (*See generally* D.E. 17 at 25–38.)  Plaintiff simply speculates that her obesity, combined with her other impairments, could meet or equal a Listing, but fails to

point to which Listing or point to evidence that she met a Listing.  (D.E. 17 at 25–38.)  Clearly, this is insufficient.

In addition, the ALJ directly considered Plaintiff's obesity throughout his evaluation. At step two, the ALJ specifically addressed Plaintiff's obesity.  (R. 20.)  Applying SSR 02-1p, the ALJ found that Plaintiff's obesity even when combined with other impairments, had no more than a minimal effect on her ability to perform basic work activities, and therefore was a non-severe impairment.  (*Id.*)  In assessing Plaintiff's RFC, the ALJ expressly considered Plaintiff's obesity in combination with Plaintiff's severe and non-severe impairments finding that Plaintiff's obesity had no more than a minimal effect on her ability to perform basic work activities.  (R. 27.)  On this record, substantial evidence—more than a mere scintilla—supports the ALJ's obesity assessment.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, this Court finds that ALJ Lee's factual findings were supported by substantial credible evidence in the record and that his legal determinations were correct.  The Commissioner's determination is therefore **AFFIRMED**.  An appropriate order follows.

*s/ Susan D. Wigenton*          
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:   Clerk
cc:     Parties